# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

**LARRY REDMON,**

    **Plaintiff-Appellant,**

    **V.**

**YOROZU AUTOMOTIVE TN, INC.**

    **Defendant-Appellee**

**APPEAL NO. 19-5395**
**Eastern District of Tennessee**
**District Case No. 4:18-cv-00038**

---

## OPENING BRIEF OF PLAINTIFF-APPELLANT LARRY REDMON

Joyce W. Cooper
Attorney for Appellant
Agee Owens & Cooper
(931)507-1000
110 N. Spring St.
McMinnville, TN 37111
jcooper@ageeowenslaw.com

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 19-5395                    Case Name: Larry Redmon v. Yorozu Automotive TN

Name of counsel:  Joyce W. Cooper

Pursuant to 6th Cir. R. 26.1, Larry Redmon
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No. Party is an individual.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> Upon information and belief, there is none.

---

### CERTIFICATE OF SERVICE

I certify that on _____ April 24,2019 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joyce Cooper

Agee Owens & Cooper

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

STATEMENT IN SUPPORT OF ORAL ARGUMENT                1

JURISDICTIONAL STATEMENT                1

STATEMENT OF THE ISSUES AND THE STANDARD OF REVIEW                2

STATEMENT OF THE CASE                2

SUMMARY OF ARGUMENT                4

ARGUMENT                8

I.  THE SIXTH CIRCUIT NEEDS TO RECONCILE EEOC V. HARRIS                8
    FUNERAL HOMES AND VICKERS V. FAIRFIELD MEDICAL CENTER
    A. The Seventh Circuit's Comparative-Method Test in *Hively*.                8
    B. The Sixth Circuits Panel's Application of *Hively* in *Harris Funeral
       Homes*.                10
    C. Application of Harris Funeral Homes to Sexual Orientation Claims 11
    D. The Reasoning Applied in *Harris Funeral Homes* is in Conflict with
       *Vickers v. Fairfield Medical Center*                14

II.  IN LIGHT OF *HARRIS FUNERAL HOMES*, THE CONTINUED
     APPLICATION OF VICKERS DENIES EQUAL PROTECTION UNDER
     THE LAW AND DUE PROCESS TO HOMOSEXUALS WHO CONFORM
     TO GENDER STEREORTYPES IN THE WORKPLACE, WHILE
     PROTECTING THOSE WHO DISPLAY GENDER NONCONFORMING
     HOMOSEXUALITY AT WORK.                16
     A. A Citizen's Constitutional Right to Equal Protection Extends to the
        Federal Government.                16
     B. This is an Equal Protection Argument that is Subject to Intermediate
        Scrutiny                17
     C. The Disaster Created by the Confluence of *Vickers* and *Harris Funeral
        Homes* cannot withstand Intermediate Scrutiny.                18

III.  IMMUNIZING DISCRIMINATION AGAINST THOSE WHO FORM
      SAME-SEX RELATIONSHIPS IS INCONSISTENT WITH THE
      CONSENSUS THAT DISCRIMINATION BECAUSE OF INTERRACIAL
      RELATIONSHIPS VIOLATES TITLE VII.                22

i

A. Courts and the EEOC Unanimously Condemn Discrimination Because of an Employee's Interracial Relationship as Discrimination "Because of Such Individual's Race"under Title VII.                    22

B. Discrimination Based on Same-Sex Relationships Should Stand on Equal Legal Footing under Title VII as Discrimination Based on Interracial Relationships.                    26

IV.    *VICKERS* SHOULD BE OVERRULES BECAUSE IT LIMITED TITLE VII'S APPLICATION BASED ON ITS PERCEPTION OF THE GOALS OF CONGRESS RATHER THAN ADHERING TO TITLE VII'S LANGUAGE.                    28

A. *Vickers* Erred by Ignoring the Supreme Court's Emphatic Rejection in *Oncale* of Attempts to Limit Title VII's Scope to the Perceived Goals of Congress.                    28

B. *Vickers* also Erred in Disregarding the Supreme Court's further Rejection of Reliance on Congressional Inaction as a Tool of Statutory Interpretation.                    31

V.    JUDICIAL ENGRAFTING OF A SEXUAL ORIENTATION EXCEPTION TO TITLE VII'S SEX DISCRIMINATION PROVISION IS INAPPROPRIATE.                    33

CONCLUSION                    39

CERTIFICATION OF COMPLIANCE                    40

CERTIFICATE OF SERVICE                    41

ADDENDUM                    42

**TABLE OF AUTHORITIES**

**Court Cases:**                                                      **Pages**

*AMTRAK v. Morgan*, 536 U.S. 101 (2002)                                    27

*Ash v. Tyson Foods, Inc.*, 546 U.S.  (2006)                               36

*Bibby v. Phila. Coca-Cola Bottling Co.*, 260 F.3d 257 (3d Cir.2001)   28,31,33

*Bolling v. Sharpe* 347 U.S. 403 (1954)                                  5, 17

*Brown v. Board of Education,* 347 U.S. 483 (1987)                         18

*Chacon v. Ochs*, 780 F. Supp. 680 (C.D. Cal. 1991)                        24

*Chisholm v. FCC,* 538 F.2d 349 (D.C. Cir. 1976)                           32

*Costa v. Desert Palace, Inc.*, 299 F.3d 838, 851 (9th Cir. 2002)          37

*Craig v. Boren*, 429 U.S. 190 (1976)                                      18

*Deffenbaugh-Williams v. Wal-Mart Stores*, 156 F.3d 581 (5th Cir. 1998)    24

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003)                         36

*Dillon v. Frank supra*,
No. 90-2290, 1992 U.S. App. LEXIS 766 (Jan. 15, 1992)                      34

*Doe by Doe v. City of Belleville, Ill.*,
119 F.3d 563 (7th Cir. 1997), 523 U.S. 1001 (1998)                         31

*Drake v. 3M*, 134 F.3d 878 (7th Cir. 1998)                                25

*EEOC v. Harris Funeral Homes* 884 F.3d 560 (6th Cir. 2018)           *Passim*

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)                      27

*Floyd v. Amite County Sch. Dist.*, 581 F.3d 244,  (5th Cir. 2009)                    24

*Girouard v. United States*, 328 U.S. 61 (1946)                    32

*Goluszek v. Smith,* 697 F. Supp. 1452 (N.D. Ill. 1988                    29,30

*Gresham v. Waffle House, Inc.*, 586 F. Supp. 1442 (N.D. Ga. 1984)                    23,25,26

*Grimsley v. Am. Showa, Inc.*, Case No. 3:17-cv-24, 2017 WL                    16

*Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)                    2

*Hively v. Ivy Tech Community College* 853 F.3d at 341                    *Passim*

*Holcomb v. Iona College,* 521 F.3d 130 (2d Cir. 2008)                    24,25

*Holiday v. Belle's Restaurant*, 409 F. Supp. 822 (W.D. Pa. 1976)                    24

*Kalich v. AT&T Mobility, LLC* 679 F.3d 464, 471 (6th Cir. 2012)                    4,14,16

*Lewis v. City of Chicago*, 560 U.S. 205 (2010)                    34

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103 (9th Cir. 2004)                    24

*Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57 (1986)                    28

*Moffett v. Gene B. Glick Co.*, 621 F. Supp. 244 (N.D. Ind. 1985)                    24,26

*Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75 (1998)                    *Passim*

*Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888 (11th Cir. 1986)                    24

*Pension Ben Guar. Corp. v. LTV Corporation*, 496 U.S. 633 (1990)                    32,33

*Price Waterhouse v. Hopkins*, 490 U.S. at 228 (1989)                    8,19,27,33,34

*Reed v. Campbell*, 476 U.S. 852 (1986)                    18

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)     37

*Schwartz*, supra, 35 *Harv. J. L. & Gender* at 246     25

*Smith v. City of Salem, 378 F.3d 566, 570 (6th Cir. 2004).*at 568, 575     2,11

*SmithKline Beecham Corp. v. Abbott Laboratories*
**No. 11-17357 (9th Cir. 2014)**     19

*Sperling v. United States*, 515 F.2d 465 (3d Cir. 1975), 426 U.S. 919 (1976)     24

*Stacks v. Southwestern Bell Yellow Pages, Inc.*, 27 F.3d 1316 (8th Cir. 1994)     24

*Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011)     36

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)     36

*TerVeer v. Billington* 34 F. Supp. 3d at 100(D.D.C. 2014)     37

*Thompson v. North American Stainless, L.P.*, 562 U.S. 170 (2011)     35

*Tumminello v. Father Ryan High School, Inc.*,
678 App'x 281, 285 n.1 (6th Cir. 2017)     16

*United States v. Price*, 361 U.S. 304 (1960)     32

*United States v. Windsor* 570 U.S. 744 (2013)     19

*Venters v. City of Delphi,* 123 F.3d 956 (7th Cir. 1997)     27

*Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757 (6th Cir. 2006)     *Passim*

*Whitney v. Greater N.Y. Corp. of Seventh Day Adventists,*

401 F. Supp. 1363 (S.D.N.Y. 1975)     24,25

*Zarda v. Altitude Express* 883 F.3d 100 (2018)     19

*Zuber v. Allen,* 396 U.S. 168 (1969)　　　　　　　　　　32

**Statutes**

§ 2000e-2(a)　　　　　　　　　　1

28 U.S.C. §§ 1291　　　　　　　　　　1

28 U.S.C. §§1331　　　　　　　　　　1

28 U.S.C.  §§ 1343　　　　　　　　　　1

28 U.S.C. §§ 2106-07　　　　　　　　　　1

42 U.S.C. §§ 2000e *et seq.*　　　　　　　　　　1

**Miscellaneous:**

Title VII of the Civil Rights Act of 1964　　　　　　　　　　3

5th U.S. Const. amend. VI　　　　　　　　　　17

14th U.S. Const. amend. XVI　　　　　　　　　　17

Federal Rules of Appellate Procedure 12(b)(6)　　　　　　　　　　2

Federal Rules of Appellate Procedure 12(c)　　　　　　　　　　2

 Decision No. 71- 1902, 1973 EEOC Dec. (CCH)
para. 6281 (April 29, 1971)　　　　　　　　　　23

Decision No. 71-909, 3 F.E.P 269 (1970)　　　　　　　　　　23

Decision No. 76-23, 1983 EEOC Dec. (CCH) para. 6615 (Aug. 25, 1975)　　　　　　　　　　23

Decision No. 79-03, 1983 EEOC Dec. (CCH)para. 6734 (Oct. 6, 1978)　　　　　　　　　　24

# STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant, Shane Redmon, respectfully requests oral argument. This appeal will require the Court to resolve conflicting precedents with regards to sexual orientation and the employers right to terminate employees based on this sexual orientation. Oral argument may assist the Court in resolving these issues.

# JURISDICTIONAL STATEMENT

## A. Statement of Jurisdiction of the United States District Court.

The jurisdiction of the District Court was founded on the Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e *et seq.*), and 28 U.S.C. §§ 1331 and 1343. Jurisdiction was not disputed below.

## B. Statement of Jurisdiction of the United States Court of Appeals.

The jurisdiction of the United States Court of Appeals for the Sixth Circuit is provided by 28 U.S.C. §§ 1291 and 2106-07, in that this is an appeal seeking to reverse the final judgment against Plaintiff-Appellant Larry Shane Redmon ("Appellant" or "Mr. Redmon") entered by the United States District Court for the Eastern District of Tennessee as well as that court's grant of a motion to dismiss Mr. Redmon's complaint that included a claim of discrimination in violation of 42 U.S.C. §§ 2000e *et seq.,* (Title VII). The date of entry for the final judgment issued by the United States District Court Judge Christopher H. Steger that is sought to be

reviewed is March 29, 2017. The appeal is from an order and final judgment that adjudicated all of the claims with respect to all parties, and no parties or issues remain in the District Court. Appellant did not file a motion for new trial or alteration of the judgment. His Notice of Appeal was timely filed on April 16, 2019.

## STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The issue presented is whether Appellant stated a claim of sex discrimination under Title VII by alleging that his employer subjected him to harassment, and ultimately terminated his employment, because of his sexual orientation, that is, treating his sexual attraction to men as disqualifying him from continued employment because he is a man. Pursuant to Rule 12(c), the District Court's ruling on the Motion to Dismiss is subject to *de novo* review by this Court. *Smith v. City of Salem, 378 F.3d 566, 570 (6th Cir. 2004).* The manner of review under Rule 12(c) is the same as a review under Rule 12(b)(6); the Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)

## STATEMENT OF THE CASE

Plaintiff Larry Shane Redmon ("Redmon"), who self-identifies as gay, began working as a supervisor at Yorozu in March of 2017. Tyson Mosier, another supervisor, was responsible for training Redmon and three other newly-hired supervisors(RE1 Page ID 3). In Redmon's complaint, he alleged that Yorozu employees, including Mr. Mosier, discriminated against Mr. Redmon due to his sexual orientation and retaliated against him for complaining of such discrimination(RE 1, Page ID 8). On September 18, 2017, Mr. Redmon filed a discrimination charge against Yorozu with the Tennessee Human Rights Commission and the EEOC(RE 1 Page ID 2). In that charge Mr. Redmon stated that he believed he was being discriminated against because of his sex, non-conforming to gender stereotype, and retaliated against for engaging in a protected activity, in violation of the Title VII of the Civil Rights Act of 1964.

The EEOC issued Mr. Redmon a Right to Sue letter on March 23, 2018 (RE1-1,Page ID 15), and Mr. Redmon attached his administrative Charge of Discrimination to a federal complaint against appellee that he filed in U.S. District Court for the Eastern District of Tennessee on June 21, 2018. In the complaint, Mr. Redmon described the details of the events that led to him filing charges with the EEOC(RE 1, Page ID ##3-7).

Yorozu filed a motion to dismiss on August 7, 2018 (RE 11, Page ID #48). On March 29, 2019, the district court, relying on the cases cited by Yorozu, dismissed the lawsuit with prejudice, and judgement was entered the following day (RE 21, Page ID ##95-109) On April 16, 2019, Mr. Redmon filed a timely appeal from the ruling granting the motion to dismiss and the final judgment.

## SUMMARY OF ARGUMENT

While the District Court understandably felt bound to dismiss Appellant's complaint pursuant to this Circuit's on-point holdings in *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757 (6th Cir. 2006) and *Kalich v. AT&T Mobility, LLC* 679 F.3d 464, 471 (6th Cir. 2012), in which this Court declined to extend the concept of "sex stereotyping" to sexual orientation and noting, in *Kalich,* that "sexual orientation is not a protected classification," those decisions cannot be reconciled with Supreme Court authority, other decisions of this Court, or decisions of other federal courts and the EEOC. *Vickers* therefore should be overruled, and the judgment against Appellant and grant of Appellee's motion to dismiss Appellant's complaint with prejudice should be reversed.[1]

*Vickers* should be overruled, and the decision below reversed, on five grounds. **First,** *EEOC v. Harris Funeral Homes* cites with approval the

---

[1] Appellant has filed contemporaneously herewith a Motion for Initial En Banc Consideration of Appeal pursuant to FRAP 35, as the relief requested cannot be granted by a panel.

# SUMMARY OF ARGUMENT

While the District Court understandably felt bound to dismiss Appellant's complaint pursuant to this Circuit's on-point holdings in *Vickers v. Fairfield Med. Ctr.,* 453 F.3d 757 (6th Cir. 2006) and *Kalich v. AT&T Mobility, LLC* 679 F.3d 464, 471 (6th Cir. 2012), in which this Court declined to extend the concept of "sex stereotyping" to sexual orientation and noting, in *Kalich,* that "sexual orientation is not a protected classification," those decisions cannot be reconciled with Supreme Court authority, other decisions of this Court, or decisions of other federal courts and the EEOC. *Vickers* therefore should be overruled, and the judgment against Appellant and grant of Appellee's motion to dismiss Appellant's complaint with prejudice should be reversed.[1]

*Vickers* should be overruled, and the decision below reversed, on five grounds. **First,** *EEOC v. Harris Funeral Homes* cites with approval the comparative method test used by the Seventh Circuit in *Hively v. Ivy Tech Community College.* Although transgender persons and those with alternative sexual orientations are different groups, both groups express gender

---

[1] Appellant has filed contemporaneously herewith a Motion for Initial En Banc Consideration of Appeal pursuant to FRAP 35, as the relief requested cannot be granted by a panel.

non-conforming behavior. Thus, the answer to a single legal question determines the fate of both groups in terms of Title VII protection. Application of the *Hively* test, as cited with approval by *Harris Funeral Homes*, invariably leads to the conclusion that both transgendered persons and homosexuals are entitled to protection under Title VII. The Sixth Circuit decision in the case of *Vickers v. Fairfield Medical Center,* however, impermissibly and inexplicably denies that protection to those with alternative sexual orientations, or, even worse, divides those who express alternative sexual orientations into a protected class and an unprotected class, based solely upon whether the persons concerned do or do not exhibit their gender nonconforming behavior in the workplace.

**Second,** the continued application of *Vickers* violates the right of certain homosexuals to equal protection under the law based upon the location in which they exhibit gender - nonconforming behavior. . While the equal protection requirement of the fourteenth amendment itself applies only to states, the Supreme Court created the reverse incorporation doctrine in *Bolling v. Sharpe* 347 U.S. 403 (1954), effectively applying the requirements of equal protection to the federal government via the Fifth Amendment requirement of due process. In so doing, the Court held opined that, while equal protection is a more explicit safeguard against discrimination, "discrimination may be so unjustifiable as to be violative of due

process." We submit that this reasoning applies to the instant case. Plaintiff-appellant Redmon alleges that the termination of his employment on the basis of his sex violates Title VII, and that the application of *Vickers* violates his rights to equal protection and due process for the reasons discussed below.

**Third,** *Vickers* should be overruled and the judgment below reversed for the same reason that courts and the EEOC uniformly have recognized that discrimination based on an employee's interracial relationship is discrimination because of the employee's race. When a white man asks his supervisor about taking time off to care for his ill spouse, Title VII should no more allow the employer to say "so long as your spouse is a woman" than the employer can say "so long as your spouse is white." In all these instances, it is the employee's race or sex (relative to the race or sex of the person with whom the employee is in a relationship) that is causing the differential treatment, and *Vickers* erred in parting ways with the many cases in the race context that recognize that differential, adverse treatment of this nature violates Title VII.

**Fourth,** *Vickers* is inconsistent with the Supreme Court's decision in *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998), that – with limited exceptions not relevant here –Title VII is violated when an employee suffers mistreatment that would not have occurred had the employee been of the other sex. That is the

essence of what Appellant alleged: He is making the straightforward assertion that, but for his sex, the employer would not have taken the action it did. As explained below, the fact that Congress in 1964 may not have foreseen or intended a specific application of Title VII is irrelevant, as is the failure of later Congresses to pass specific "sexual orientation" protections. The Supreme Court unanimously has rejected that approach to interpreting Title VII and repeatedly has condemned reliance on the inaction of later Congresses as a statutory construction tool. Therefore, *Vickers* erred in not following the Supreme Court's rules for interpretation, and must be overruled for that reason.

**Fifth,** *Vickers* erred, and it and the decision below should be reversed, for failing to recognize that Appellant's claim is actionable under Title VII in accordance with Price Waterhouse, and instead essentially engrafting a judicial exception that employers may discriminate against homosexuals whose behavior in the workplace comports with gender stereotypes, but whose private behavior does not, whereas the same employer may not discriminate against homosexuals who flamboyantly display their gender non-conforming behavior at work. Such a result is nonsensical. This result is further problematic in Title VII cases, given that the Supreme Court has underscored *Oncale's* holding by striking down numerous judicially-created barriers, both substantive and procedural, that tend to prevent the

pursuit of claims that "meet the statutory requirements" of Title VII. *Oncale*, 523 U.S. at 80.

In sum, Defendant-Appellee's mistreatment of Plaintiff-Appellant because of his attraction to men is a violation of Title VII under multiple analytical frameworks, including *Oncale's* discrimination lens, *Price Waterhouse's* sex stereotype approach, the analogy to interracial relationships, and the application of the Equal Protection doctrine in light of *Harris Funeral Homes*. None of these approaches require anything other than the traditional male/female definition of "sex." As further explained below, each of these mandates regarding Title VII requires that *Vickers* be overruled and the judgment below reversed.

## ARGUMENT

## I. THE SIXTH CIRCUIT NEEDS TO RECONCILE *EEOC v. HARRIS FUNERAL HOMES* AND *VICKERS v. FAIRFIELD MEDICAL CENTER*

### A. The Seventh Circuit's comparative-method test in *Hively*

In *Hively*, the *en banc* Seventh Circuit considered the claim of an openly lesbian adjunct professor at Ivy Tech Community College. 853 F.3d at 341. Hively applied for several full-time positions but was repeatedly rejected. *Id.* Beyond not being hired for a full-time position, the college did not renew her part-time job. *Id.*

She believed that Ivy Tech did not hire her and terminated her part-time job due to her sexual orientation. As a result, she filed a charge with the EEOC and sued after receiving a right-to-sue letter. *Id.* Ivy Tech responded with a motion to dismiss for failure to state a claim, arguing that sexual orientation is not a protected class under Title VII. *Id.* The district court granted Ivy Tech's motion and dismissed Hively's case with prejudice. She appealed the court's decision. *Id.* The panel affirmed, so Hively requested *en banc* review. *See id.*

Sitting *en banc*, the Seventh Circuit considered "what it means to discriminate on the basis of sex, and in particular, whether actions taken on the basis of sexual orientation are a subset of actions taken on the basis of sex." *Id.* at 343. Answering in the affirmative, the Seventh Circuit adopted the "comparative method in which [courts] attempt to isolate the significance of the plaintiff's sex to the employer's decision: has [plaintiff] described a situation in which, holding all other things constant and changing only [their] sex, would [plaintiff] have been treated the same way?" *Id.* at 345.

Applying the test to Hively, a woman, the Seventh Circuit analyzed the "situation in which Hively is a man, but everything else stays the same: in particular, the sex or gender of the partner." *Id.* In other words, the Seventh Circuit asked if Hivey, who is openly lesbian, would have been terminated or not hired had

"she been a man married to a woman (or living with a woman, or dating a woman) and everything else had stayed the same . . . ." *Id.* If the answer to that question is "no," then Hively's claim for discrimination on the basis of sexual orientation is "paradigmatic sex discrimination." *Id.* Based on this analysis, the Seventh Circuit held that Ivy Tech disadvantaged Hively "because she is a woman." *Id.* The court also reasoned that "[v]iewed through the lens of the gender non-conformity line of cases, Hively represents the ultimate case of failure to conform to the female stereotype . . . she is not heterosexual." *Id.* at 346.

The Seventh Circuit ultimately overruled prior precedent by concluding that "discrimination on the basis of sexual orientation is a form of sex discrimination" under Title VII. *Id.* at 341, 351.

### B. The Sixth Circuit panel's application of *Hively* in *Harris Funeral Homes*

The Sixth Circuit, in *Harris Funeral Homes*, applied the "comparative method" test articulated in *Hively*, asking "whether Stephens [who was transitioning from male to female] would have been fired if Stephens had been a woman who sought to comply with the women's dress code." Concluding that the answer is "no," the court went on to say, [T]his, in and of itself, confirms that Stephens' sex impermissibly affected [the supervisor]'s decision to fire Stephens."

*Id.* at 575. The panel reasoned that "[d]iscrimination on the basis of transgender and transitioning status is necessarily discrimination on the basis of sex, and thus the EEOC should have had the opportunity to prove that the funeral home violated Title VII by firing Stephens because she is transgender and transitioning from male to female." *Id.* at 571.

The Sixth Circuit panel also held that "discrimination against transgender persons necessarily implicates Title VII's proscriptions against sex stereotyping." *Id.* at 576. Relying upon  its prior decision in *Smith v. City of Salem, Ohio*,[13] the panel noted that "a transgender person is  someone who 'fails to act and/or identify with his or her gender'—i.e., someone who is inherently 'gender non-conforming.'" *Harris Funeral Homes*, 884 F.3d at 576 (quoting and citing *Smith*, 378 F.3d at 568, 575). The panel concluded that an employer "cannot discriminate on the basis of transgender status without imposing its stereotypical notions of how sexual organs and gender identity ought to align. There is no way to disaggregate discrimination on the basis of transgender status from discrimination on the basis of gender non-conformity, and we see no reason to try." *Id.* at 576–77.

> **C. Application of *Harris Funeral Homes* to sexual-orientation claims**

Appellant Redmon contends that the rationale embraced by the Sixth Circuit panel in *Harris Funeral Homes* leads to the conclusion that—in the Sixth Circuit—Title VII now protects against discrimination and retaliation on account of sexual orientation. Applying the *Hively* "comparative method" to his own situation, Redmon submits that if he "had been a woman who had a sexual preference for men, and all other factors stayed the same, he would not have been subject to the hostility, the termination, or the retaliation . . . ." [Doc. 18 at PageID #: 80]. Therefore, under *Harris Funeral Homes*, which has established Title VII protection via the comparative method test from *Hively*, he has stated a claim for relief to overcome Yorozu's motion to dismiss.

Appellant submits to this honorable Court that, as also stated by the lower Court, t is difficult—perhaps impossible—to read the "comparative method" test adopted in *Harris Funeral Homes* and come to any conclusion but that sexual orientation should be included as a protected class under Title VII. In *Harris Funeral Homes*, the Sixth Circuit endorsed the concept that discrimination against a person for non-conformance to sexual stereotypes amounts to discrimination on the basis of "sex"—a protected category under Title VII. The "non-conformance" at issue was that an employee who exhibited primary and secondary sex characteristics of a male informed his employer that he was going to dress as a

woman as he began transitioning from male to female. The sexual stereotype violated was that men should not wear skirts. *See, e.g.*, *Harris Funeral Homes*, 884 F.3d at 568 ("The Funeral Home requires its public-facing male employees to wear suits and ties and its public-facing female employees to wear skirts and business jackets.").

Applying the *Harris Funeral Homes* panel's reasoning to the instant case—which involves a gay male employee rather than a transgender employee - the lower Court conceded that it would have to conclude that sexual orientation is a protected class under Title VII. Indeed, if non-conformance to a sexual stereotype is tantamount to discrimination on the basis of sex, it would be hard to find a clearer, more concrete example of non-conformance to a sexual stereotype than same-sex attraction. In *Harris Funeral Homes*, this honorable Court accepted the reality of a sexual stereotype that men are expected to dress one way and women another. More so than choice of attire, sexual orientation is the ultimate sexual stereotype. It holds that men are supposed to be sexually attracted to women—and women are supposed to be attracted to men. When a person is treated differently because of his or her sexual orientation, such treatment is necessarily rooted in non-conformance to a sexual stereotype. So, if the rationale adopted in *Harris Funeral Homes* were controlling authority, the lower Court felt it would be

compelled to find that sexual orientation is a protected category under Title VII.


### D. THE REASONING APPLIED IN HARRIS FUNERAL HOMES IS IN CONFLICT WITH VICKERS V. FAIRFIELD MEDICAL CENTER

In *Vickers v. Fairfield Medical Center*,[15] the Sixth Circuit held that a plaintiff's sexual orientation cannot be used to claim Title VII discrimination on account of "sex." *Id.* Although *Vickers* was decided after the Supreme Court had recognized that Title VII protects claims based on sex stereotyping and same-sex sexual harassment,[16] the Sixth Circuit chose not to extend the concept of "sex stereotyping" to sexual orientation. Again, in *Kalich \v. AT&T Mobility, LLC*,[17] the appellate court held, "harassment or discrimination based upon a person's sexual orientation cannot form the basis of a cognizable claim," noting that under Title VII, "sexual orientation is not a protected classification."

The Court acknowledges that the Sixth Circuit panel in *Harris Funeral Homes* offered an explanation as to why *Vickers* was not controlling: "*Vickers* does not control this case because *Vickers* concerned a different legal question . . . *Vickers* addressed only whether Title VII forbids sexual orientation discrimination, not discrimination against a transgender individual." *Harris Funeral Homes*, 884 F.3d at 579-80 (internal quotation marks omitted). The lower Court recognized that

sexual orientation and transgender are different categories, however, both the lower Court and the Appellant respectfully point out that the *legal question* at issue applies equally to both categories of individuals. It simply requires a determination as to whether discrimination against an individual for non-conformance to sexual stereotypes constitutes "sex" discrimination under Title VII. Once that legal question is answered—and the panel did answer it in *Harris Funeral Homes*—the court is left to make a factual, rather than a legal determination. And, that factual determination is simply whether same- sex attraction constitutes non-conformance to a sexual stereotype that would be equivalent to the perceived non-conformance of a male wearing female clothing while transitioning to a female identity.

Adhering to the legal reasoning in *Harris Funeral Homes* should lead to the conclusion that sexual orientation is a protected class under Title VII, however, reaching that conclusion would require this honorable Court to reverse *Vickers* and *Kalich,* wherein it held that sexual orientation is not a protected class under Title VII. *See, e.g.*, *Grimsley v. Am. Showa, Inc.*, Case No. 3:17-cv-24, 2017 WL 3605440, at *4 (S.D. Ohio Aug. 21, 2017) (citing *Tumminello v. Father Ryan High School, Inc.*, 678 App'x 281, 285 n.1 (6th Cir. 2017)) ("*Vickers* remains controlling law until overruled by the Sixth Circuit sitting *en banc*, or until the United States Supreme Court issues a contrary ruling.").*Vickers*, 453 F.3d at 763-64.

The lower Court recognized its responsibility to follow Sixth Circuit precedent. Here, however, it also recognized that the principles set forth by the panel in *Harris Funeral Homes* are in conflict with *Vickers*, *Kalich* and their progeny. The lower Court set forth its hope that the appellate court would use this case—or one with similar facts—to reconcile *Harris Funeral Homes*, *Vickers* and *Kalich*, and today we submit that such reconciliation should be made in favor of the comparative method test used in *Hively,* and that the order dismissing Appellant's case should be reversed and remanded to the trial court.

II. **IN LIGHT OF *HARRIS FUNERAL HOMES*, THE CONTINUED APPLICATION OF *VICKERS* DENIES EQUAL PROTECTION UNDER THE LAW AND DUE PROCESS TO HOMOSEXUALS WHO CONFORM TO GENDER STEREOTYPES IN THE WORKPLACE, WHILE PROTECTING THOSE WHO DISPLAY THEIR GENDER NON-CONFORMING HOMOSEXUALITY AT WORK.**

   A. **A Citizen's Constitutional Right to Equal Protection Extends to the Federal Government.**

The 14th Amendment to the United States Constitution reads, in part "...nor shall any State [...] deny to any person within its jurisdiction the equal protection of the laws." Although it is clear from the text that the 14th Amendment applies only to the States, the Supreme Court, in *Bolling v. Sharpe* 347 U.S. 497 (1954) held that school segregation was unconstitutional under the Due Process Clause of the

Fifth Amendment to the United States Constitution. The Court observed that the Fifth Amendment to the United States Constitution lacked an Equal Protection Clause, as in the Fourteenth Amendment to the United States Constitution, yet went on to hold that the concepts of Equal Protection and Due Process are not mutually exclusive, thus establishing the reverse incorporation doctrine. In his well-known decision, Chief Justice Earl Warren held that "the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive." While equal protection is a more explicit safeguard against discrimination, the Court stated that "discrimination may be so unjustifiable as to be violative of due process." Referring to the technicalities raised by the case's location in the District of Columbia, the Court held that, in light of its decision in *Brown* that segregation in state public schools is prohibited by the Constitution, it would be "unthinkable that the same Constitution would impose a lesser duty on the Federal Government". Equal Protection analysis further applies to both legislative and executive action regardless if the action is of a substantive or procedural nature. Judicially crafted rules are valid only if they conform to the requirements of Equal Protection. See, e.g., *Reed v. Campbell*, 476 U.S. 852 (1986).

**B. This is an Equal Protection Argument that is Subject to Intermediate Scrutiny.**

In the context of sex-based classifications, intermediate scrutiny applies to constitutional challenges of equal protection and discrimination. To satisfy intermediate scrutiny, the state, or in this case the 6th Circuit, must show that the law or policy being challenged furthers an important government interest by means that are substantially related to that interest.*Craig v. Boren*, 429 U.S. 190 (1976). On October 18, 2012, the Second Circuit Court of Appeals became the first federal appeals court to hold that laws that classify people based on sexual orientation should be subject to intermediate scrutiny. The decision of the Second Circuit was later affirmed by the Supreme Court on June 26, 2013, but the United States Supreme Court did not specifically state the level of scrutiny it applied *United States v. Windsor* 570 U.S. 744 (2013). On January 21, 2014, the Ninth Circuit Court of Appeals ruled in *SmithKline Beecham Corp. v. Abbott Laboratories No. 11-17357 (9th Cir. 2014)* that "classifications based on sexual orientation are subject to heightened scrutiny." Appellant submits that the instant argument revolves around classifying people by sexual orientation, and thus is subject to intermediate scrutiny.

### C. The Disaster Created by the Confluence of *Vickers* and *Harris Funeral Homes* cannot withstand Intermediate Scrutiny.

The case at bar is ripe for an equal protection / due process analysis, particularly in light of the quagmire that *Harris Funeral Homes* and *Vickers*, when considered together, create in the 6th Circuit. The question of whether Title VII includes sexual orientation in its prohibition against discrimination on the basis of sex has been thoroughly briefed, argued, and discussed in cases such as *Price Waterhouse, Hively, Vickers, Harris Funeral Homes, Zarda v. Altitude Express* 883 F.3d 100 (2018), *and others,* and the lower Court thoroughly reviewed the issue in its Memorandum Order. Today, Plaintiff takes the position that the application of *Vickers* in this case violates his right to equal protection under the law, as imposed upon the federal government by the reverse incorporation doctrine, via the due process requirement of the 5th Amendment.

In today's environment, the results of *Vickers v. Fairfield Medical Center* seem somewhat bizarre. The Sixth Circuit tied itself into knots by embracing alternative sexual orientation, only to deploy a series of flawed arguments to deny the claim. The Vickers plaintiff was allegedly discharged from his job because he was gay, and he argued that sexual orientation discrimination is a form of sex discrimination. The Sixth Circuit opined that "[i]n all likelihood, any discrimination based on sexual orientation would be actionable under a sex stereotyping theory if this claim is allowed to stand, ***as all homosexuals, by***

***definition, fail to conform to traditional gender norms in their sexual practices.***

[Emphasis Added]. By recognizing the relationship between gender norms and sexual orientation, the court adopted a position that is clearly contradictory to its ultimate decision. Nonetheless, to prevent the claim from standing, the Court deployed a conduct distinction argument to cabin off sexual orientation from sex discrimination in order to deny the claim. The Vickers court recharacterized Vickers' gender stereotyping claim as an issue of sexual conduct when it wrote that "his sexual practices. . .did not conform to the traditionally masculine role. Rather, in his supposed sexual practices, he behaved more like a woman." Because Vickers did not exhibit this gender non-conforming behavior "in any observable way at work," the court dismissed his claim as "more properly viewed as. . .based on. . .homosexuality, rather than on gender non-conformity," after it had just made the statement emphasized above.

Interestingly, the Court did not opine regarding how the location in which *Vickers* exhibited his homosexual behavior purportedly made the behavior an issue of sexual orientation versus an issue of gender nonconformity. Respectfully, Appellant submits that the location in which a certain behavior is displayed is irrelevant to whether the behvaior is of any certain type. In other words,the *Vickers* Court has mixed incompatible approaches in its analysis in such a way that the law

in the 6th Circuit, assuming that both *Harris Funeral Homes* and *Vickers* are good law, has created a legal climate where a homosexual who flaunts his gender non-comforming behavior at work is entitled to protection under Title VII because the Vickers court adopted a distinction based on the *location of the conduct.* On the other hand, a homosexual who behaves in a gender - conforming way at work, and who generally keeps his sexual business to himself, is not entitled to protection under Title VII because he doesn't exhibit gender non-conforming characteristics *at work.*

The idea that the 6th Circuit's Title VII jurisprudence has resulted in a climate where citizens can be discriminated against for what they do in the privacy of their home, whilst they are protected if they display that behavior publicly is, as we suggested before, nonsensical. Intermediate Scrutiny requires that this judicial policy 1) further an important government interest; 2) by a means that is substantially related to that interest. This policy fails on both counts. There can be no important governmental interest in protecting a sub-set of homosexuals who flaunt their gender nonconforming behavior, while refusing to protect those who keep their sexual business to themselves. If sexual orientation is to be protected for anyone, it should be protected for everyone. Unless the 6th Circuit identifies an important governmental interest that is furthered by accidentally creating a

protected class and an unprotected class among homosexuals, we need not address

the second prong of the test.

### III. IMMUNIZING DISCRIMINATION AGAINST THOSE WHO FORM SAME-SEX RELATIONSHIPS IS INCONSISTENT WITH THE CONSENSUS THAT DISCRIMINATION BECAUSE OF INTERRACIAL RELATIONSHIPS VIOLATES TITLE VII.

It is impossible to reconcile the unanimous view of the courts and the EEOC

for decades that discrimination based on an employee's interracial marriage or

interracial friendships is "manifestly" or "irrefutab[ly]" race discrimination

proscribed by Title VII, *see*, e.g., *Gresham v. Waffle House, Inc.*, 586 F. Supp.

1442, 1445 (N.D. Ga. 1984) (citation omitted), with an argument that

discrimination based on one's same-sex intimate relationships is not sex

discrimination. The same principles of construction apply to determining what

constitutes discrimination "because of race" and "because of . . . sex," and thus

should dictate the same treatment of relationships involving the enumerated traits

in Title VII.

> ### A. Courts and the EEOC Unanimously Condemn Discrimination Because of an Employee's Interracial Relationship as Discrimination "Because of Such Individual's Race" Under Title VII.

The EEOC consistently has held that an employer who takes adverse action against an employee or a potential employee because of interracial association violates Title VII. *See* Decision No. 76-23, 1983 EEOC Dec. (CCH) para. 6615 (Aug. 25, 1975) (Title VII claim properly alleged where job applicant not hired due to his white sister's relationship with an African-American); Decision No. 71-1902, 1973 EEOC Dec. (CCH) para. 6281 (April 29, 1971) (charging party's interracial dating was a factor in discharging her and thus presented a Title VII claim); Decision No. 71-909, 3 F.E.P 269 (1970) (Title VII applied to a white employee's claim that he was discharged because of associations with African-American employees); see also Decision No. 79-03, 1983 EEOC Dec. (CCH) para. 6734 (Oct. 6, 1978) (recognizing that an interracial relationship could be the basis for a Title VII claim, although evidence did not support the allegation). The courts to consider the question unanimously agree. *Floyd v. Amite County Sch. Dist.,* 581 F.3d 244, 250 (5th Cir. 2009); *Holcomb v. Iona College*, 521 F.3d 130, 138-39 (2d Cir. 2008); *Deffenbaugh-Williams v. Wal-Mart Stores*, 156 F.3d 581, 588-89 (5th Cir. 1998); *Stacks v. Southwestern Bell Yellow Pages, Inc.,* 27 F.3d 1316, 1327 n.6 (8th Cir. 1994); *Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 891-92 (11th Cir. 1986); *Sperling v. United States,* 515 F.2d 465, 484 (3d Cir. 1975), cert. denied, 426 U.S. 919 (1976); *Chacon v. Ochs*, 780 F. Supp. 680 (C.D. Cal. 1991);

*Gresham*, 586 F. Supp. at 1445; *Holiday v. Belle's Restaurant*, 409 F. Supp. 904 (W.D. Pa. 1976); *Whitney v. Greater N.Y. Corp. of Seventh Day Adventists,* 401 F. Supp. 1363, 1366 (S.D.N.Y. 1975); see also *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1118 (9th Cir. 2004) (in black employee's Title VII action, trial court incorrectly ignored evidence of a white co-worker's harassment because of his support for black employees because "Title VII has . . . been held to protect against adverse employment actions taken because of the employee's close association with black friends or coworkers") (citation omitted); *Moffett v. Gene B. Glick Co.*, 621 F. Supp. 244, 269 (N.D. Ind. 1985) (holding that white plaintiff satisfied the Title VII requirement that, "'but for' the fact of her race, she would not have been the object of harassment" with evidence that her two harassers "specifically objected to [her] dating blacks"); *Schwartz, supra, 35 Harv. J. L. & Gender* at 246 ("In the past thirty years, every case to consider a relational discrimination claim in the context of race has held that Title VII applies to such claims.").

Indeed, the courts holding that Title VII's race provision is implicated by mistreatment because of one's interracial relationship are often dismissive of the notion that one could contend otherwise. See *Holcomb*, 521 F.3d at 139 ("The reason is simple: where an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers

discrimination because of the employee's own race."); *Gresham*, 586 F. Supp. at 1445 ("the logic . . . is irrefutable. Clearly, . . . but for their being white, the plaintiffs in these cases would not have been discriminated against. This Court cannot imagine what more need be alleged to bring such plaintiffs within the plain meaning of Title VII's proscription of discrimination against an individual 'because of such individual's race.'"); *Whitney*, 401 F. Supp. at 1366 ("Manifestly," if the firing was because "the defendant disapproved of a social relationship between a white woman and a black man, the plaintiff's race was as much a factor in the decision to fire her as that of her friend."). While this Circuit has not reached the issue formally, it seems fair to characterize *Drake v. 3M,* 134 F.3d 878 (7th Cir. 1998), as endorsing the validity of these holdings. In *Drake*, this Court cited *Gresham* and *Moffett* approvingly for recognizing that discrimination against those in interracial marriages is "because of the employee's race, as § 2000e-2(a) requires." 134 F.3d at 884.While *3M* conceded the point, it did argue that Title VII might tolerate discrimination because of interracial friendships, a proposition this Court rejected. Id. ("the key inquiries should be whether the employee has been discriminated against and whether that discrimination was 'because of' the employee's race. Contrary to 3M's assertions, we do not believe that an objective 'degree of association' is relevant to this inquiry.").

**B. Discrimination Based on Same-Sex Relationships Should Stand on Equal Legal Footing Under Title VII as Discrimination Based on Interracial Relationships.**

Appellant is unaware of any serious argument why the consensus that Title VII bans discrimination founded on an interracial relationship would not apply with equal force to discrimination because of a same-sex relationship. As a starting point, the "statute on its face treats each of the enumerated categories exactly the same." *Price Waterhouse*, 490 U.S. at 244 n.9 (justifying reliance on statements of legislative intent regarding the treatment of race in the workplace as authoritative regarding the appropriate treatment of sex). Additionally, the Supreme Court repeatedly has held that, absent a good reason otherwise, the standards concerning actionable conduct should be harmonized among the categories enumerated in Title VII. "Courts of Appeals in sexual harassment cases have properly drawn on standards developed in cases involving racial harassment. [citations] . . . Although racial and sexual harassment will often take different forms, and standards may not be entirely interchangeable, we think there is good sense in seeking generally to harmonize the standards of what amounts to actionable harassment." *Faragher v.*

*City of Boca Raton*, 524 U.S. 775, 787 n.1 (1998) (citations omitted); accord *Venters v. City of Delphi*, 123 F.3d 956, 975 (7th Cir. 1997) (noting that courts had been applying the same "principles to harassment based on race, religion, and national origin as well as sex in the [past] twenty-five years"); see also *AMTRAK v. Morgan*, 536 U.S. 101, 116 n.10 (2002) ("Hostile work environment claims based on racial harassment are reviewed under the same standard as those based on sexual harassment."); *Oncale*, 523 U.S. at 78 (deciding as a threshold matter that a man can discriminate against a man, citing "the related context of racial discrimination in the workplace [where] this Court has rejected any conclusive presumption that an employer will not discriminate against members of his own race."); *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (citing racial harassment hostile work environment holdings as authority for construing Title VII to cover sexual harassment even without pecuniary loss to the employee).16 Based on logic, the statutory parallelism, and Supreme Court authority applying the same standards to assess race and sex discrimination under Title VII, the analogy to discrimination based on interracial relationships should hold, and the consensus that such discrimination is forbidden by Title VII should apply with equal force to discrimination based on one's intimate same-sex relationships. For this reason as

well, *Vickers* should be overruled and the dismissal of Appellant's Title VII claim should be reversed.

## IV. *VICKERS* SHOULD BE OVERRULED BECAUSE IT LIMITED TITLE VII'S APPLICATION BASED ON ITS PERCEPTION OF THE GOALS OF CONGRESS, RATHER THAN ADHERING TO TITLE VII'S LANGUAGE.

*Vickers* held that sexual orientation is excluded from the sex discrimination protections of Title VII. *See* 453 F.3d 757 (6th Cir. 2006). In doing so, *Vickers* cited authority from the Third Circuit, *Bibby v. Phila. Coca-Cola Bottling Co.*, 260 F.3d 257, 265 (3d Cir.2001) ("Harassment on the basis of sexual orientation has no place in our society. Congress has not yet seen fit, however, to provide protection against such harassment.") (internal citations omitted).

### A. *Vickers* Erred by Ignoring the Supreme Court's Emphatic Rejection in Oncale of Attempts to Limit Title VII's Scope to the Perceived Goals of Congress.

In its first thirty-four years, the "sex" provision of Title VII was the subject of a spirited debate among the courts, with one side holding that coverage turned only on the question of whether, but for the sex of the employee, the mistreatment

would have occurred, and the other side believing that Title VII's sex discrimination prohibition was passed only to ensure women would have equal opportunity in the workplace, and thus foreswearing any application of the "because of . . . sex" inquiry that would yield a result not in service of that goal. While sexual harassment, in its predominant male-on-female form, posed no conflict between these two competing interpretative approaches, male-on-male sexual harassment did.

The philosophical standard-bearer among the pre-Oncale cases holding that Title VII excludes claims for same-sex sexual harassment was *Goluszek v. Smith,* 697 F. Supp. 1452 (N.D. Ill. 1988). There, the court held that, even though a "wooden application of" the statutory words "because of such individual's . . . sex" would lead to recognizing same-sex sexual harassment claims, it had chosen "instead to adopt a reading of Title VII consistent with the underlying concerns of Congress" in passing the law and reject such a claim because Congress sought to eradicate gender power imbalances in the workplace and no such circumstance was presented in that case." Id. at 1456 ("Goluszek was a male in a male-dominated environment. . . . Goluszek may have been harassed 'because' he is a male, but that harassment was not of a kind which created an anti-male environment in the workplace.") (emphasis supplied).

*Oncale* could hardly have been more emphatic, however, in rejecting Goluszek's approach in its unanimous ruling to the contrary in the context of an all-male (not merely "male-dominated") workplace. 523 U.S. at 77-79.7 The Supreme Court in Oncale unanimously directed courts simply to follow the words in the statute, irrespective of any divergence between that result and the assumed mindset of the members of the 88th Congress. See id. at 79 ("male-on-male sexual harassment in the workplace was assuredly not the principal evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils. . . ."). Thus, it is improper to interpret Title VII by guessing at the mindset of the 88th Congress, because "it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed." Id. at 79.

In rejecting the argument in *Oncale* that some mistreatment "because of . . . sex" might be outside Title VII's reach, the Supreme Court thus repudiated the notion that the scope of the statute is limited to the legislative goals that spurred its passage. Oncale held, instead, that the words of the sex discrimination provision in Title VII are dispositive of its scope. 523 U.S. at 79-80. Indeed, Oncale echoed what this Court had declared a year earlier in Doe by Doe v. City of Belleville, Ill., 119 F.3d 563 (7th Cir. 1997), vacated on other grounds, 523 U.S. 1001 (1998) that

the fact that "Congress was concerned with the barriers to equality that women encounter in the workplace 'does not create 'a negative inference' limiting the scope of the Act to the specific problem that motivated its enactment." Doe, 119 F.3d at 572 (citation omitted). *Vickers* accordingly should be overruled due to its failure to realize that the very core of *Bibby's* logic had been repudiated by *Oncale*.

**B. *Vickers* Also Erred in Disregarding the Supreme Court's Further Rejection of Reliance on Congressional Inaction as a Tool of Statutory Interpretation.**

One can be reasonably sure that Justice Scalia and a unanimous *Oncale* Court, in dismissing the relevance of the motivations of the 88th Congress that passed Title VII, were not inviting courts deciding coverage issues to shift their focus to what later sessions of Congress did not enact into statutory law. And yet that discredited crutch has been used repeatedly to prop up holdings, as *Vickers* did in citing *Bibby,* (and as has been done by some other circuits).

Many Supreme Court cases warn against the folly of relying on Congressional inaction as an interpretative tool. "[S]ubsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress. It is a particularly dangerous ground on which to rest an interpretation of a prior statute when it

concerns, as it does here, a proposal that does not become law.'" *Pension Ben Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990) (internal citations and quotation marks omitted); accord *Zuber v. Allen,* 396 U.S. 168, 185 n.21 (1969) ("'It is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law.'") (quoting *Girouard v. United States*, 328 U.S. 61, 69 (1946)); United States v. Price, 361 U.S. 304, 310-311 (1960) ("nonaction by Congress affords the most dubious foundation for drawing positive inferences."); *Chisholm v. FCC,* 538 F.2d 349, 361 (D.C. Cir. 1976) ("attributing legal significance to Congressional inaction is a dangerous business."). "Congressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change." *Pension Ben Guar. Corp.*, 496 U.S. at 650.

*Vikers* unconvincingly tried to bolster the legitimacy of relying on Congressional inaction by relying on *Bibby*. Appellant would respectfully point out that Congress may choose not to correct a misinterpretation until the Supreme Court has ruled, and in fact has followed that approach with respect to Title VII. For example, it was not until after *Price Waterhouse* that Congress answered the question of whether an employer that impermissibly considered an enumerated trait

can avoid liability by showing that it would have taken the same action regardless – and if so, what showing the employer must make. Congress waited for years while the circuit courts offered answers that conflicted with Congress's eventual resolution of the matter. For these reasons, *Vickers* should be reversed, and this case remanded.

## V. JUDICIAL ENGRAFTING OF A SEXUAL ORIENTATION EXCEPTION TO TITLE VII'S SEX DISCRIMINATION PROVISION IS INAPPROPRIATE.

*Vickers'* holding should be viewed for what it is: a judicial engrafting of an exception onto Title VII that, irrespective of whether an otherwise valid claim may be stated for discrimination based on sex, no such claim will be recognized to the extent that the employee was mistreated because of his or her homosexuality.

Indeed, some courts seem to have talked themselves into believing that a statutory exclusion of sexual orientation claims is written into Title VII and that courts must be vigilant to ensure that lesbian and gay employees not be allowed to circumvent this illusory exclusion by invoking their rights to be free from discrimination because of sex or religion. See, e.g., Dillon, 1992 U.S. App. LEXIS

766, at *22 (rejecting applicability of Price Waterhouse, stating that "Thus, Dillon cannot escape our holding, and those of other circuits" that sexual orientation is not covered by Title VII).To illustrate this error, consider a hypothetical where the Acme Company issues a memorandum stating that the following employees were terminated for behavior unbecoming of "an Acme Lady": Agnes for driving a motorcycle to and from work, Beth for wearing pants and not wearing makeup or jewelry every day for six months, and Christine for having a relationship with another woman. If each employee sued under Title VII, they all should be allowed to proceed, because all have viable sex discrimination claims that they would not have been terminated for their conduct had they been male, based on the plain language of the statute, Oncale, and Shepherd.

The Supreme Court Consistently Has Followed *Oncale's* Command That Courts Entertain All Claims That "Meet The Statutory Requirements" Of Title VII. While it is generally bad judicial practice to engraft exceptions onto statutes, it is especially so regarding Title VII, where Supreme Court holdings repeatedly have reaffirmed the principle that courts should entertain all claims that "meet the statutory requirements of Title VII." See *Oncale*, 523, U.S. at 80. "It is not for us to rewrite the statute so that it covers only what we think is necessary to achieve what we think Congress really intended." *Lewis v. City of Chicago,* 560 U.S. 205,

215 (2010) (citing *Oncale*). *Lewis* unanimously held that, if applying the textual words of Title VII leads to a situation where "Congress allowed claims to be brought against an employer" in an expansive fashion, and "that effect was unintended, it is a problem for congress, not one that federal courts can fix." 560 U.S. at 217.

The Supreme Court repeatedly has struck down judicial barriers and rules, unsupported by statutory language, that had the effect of potentially immunizing conduct unlawful under Title VII. See *Thompson v. North American Stainless, L.P.*, 562 U.S. 170, 174-75 (2011) (rejecting "a categorical rule that third-party reprisals do not violate Title VII."); *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456-458 (2006) (per curiam) (unanimously rejecting circuit court's ruling that the decision maker's reference to each black plaintiff as "boy" was "not evidence of discrimination" as a matter of law); *id.* at 456-57 (castigating as "unhelpful and imprecise" the lower court's requirement that, to "infer[] pretext from superior qualifications," the disparity had to be "so apparent as virtually to jump off the page and slap you in the face.") (internal quotations and citations omitted); see generally *Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011) (unanimously rejecting, under statute "very similar to Title VII," the lower court's unduly narrow view of

bias as "motivating factor" in termination). In *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the Supreme Court unanimously cast aside the law of no fewer than four circuits that had held that a plaintiff must present "direct evidence" to establish "mixed motive" liability. See id. at 95 (citing cases). Similarly, in *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), the Court unanimously rejected the Second Circuit's use of a heightened pleading standard for Title VII cases. See id. at 515. While Swierkiewicz discussed the Second Circuit's erroneous interpretation of the Federal Rules of Civil Procedure, the decision also explained another fundamental error wrought by approving the dismissal of the allegations: "they state claims upon which relief could be granted under Title VII and the ADEA." Id. at 514. Likewise, in *Reeves v. Sanderson Plumbing Products, Inc*., the Supreme Court unanimously held that an employee is entitled to a jury if the employee refutes the employer's pretextual reason(s), pointing out that "[t]o hold otherwise would be effectively to insulate an entire category of employment discrimination cases from review." 530 U.S. 133, 148 (2000); see also *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 851 (9th Cir. 2002) (en banc) (accurately depicting *Oncale* as "[s]ticking to the statutory wording . . . in reject[ing] various circuits' special requirements for same-sex sexual harassment cases."), aff'd, 539 U.S. 90 (2003).

This principle has been applied in the sexual orientation context as well. In *TerVeer*, the district court noted ample authority supporting the plaintiff's claim of religious discrimination based on his mistreatment for behavior that conflicted with his supervisor's religious beliefs. 34 F. Supp. 3d at 117. The court allowed his claim to proceed, "see[ing] no reason to create an exception to these cases for employees who are targeted for religious harassment due to their status as a homosexual individual." Id. at 117-18.22

In the face of the above-cited authority - all of which should suggest to the *Vickers* Court that judicial barriers and rules, unsupported by statutory language, that have the effect of potentially immunizing unlawful conduct under Title VII are inappropriate - the *Vickers* Court nonetheless engrafted, without explanation, a distinction between gender-nonconforming characteristics that are "readily demonstrable in the workplace" as opposed to those that are "not behavior observed at work or affecting his job performance." Basing their finding on the assumption that transgendered conduct is expressed in the workplace, and is therefore protected, but that sexual orientation, presumably practiced at home, is not expressed in the workplace and is therefore not protected, hits impermissibly wide of the mark when interpreting Title VII under *Oncale*.

Let us consider a hypothetical problem using the rationale in *Vickers.* Acme Co. hires four employees. It later terminates all four of them for failure to conduct themselves appropriately. Abigail wears pants, avoids jewelry, and wears a short haircut. Andrew presents himself at work dressed as, and behaving as, a man, but on weekends he wears dresses and high heels, goes to bars, and calls himself "Annie." Allison is openly lesbian and often appears at work wearing a provocative hat, a rainbow bracelet, or some other outward show of support for the LGBT community. She brings her partner to work-related social events. Asher, on the other hand, is soft spoken and quiet, but dresses like a man and minds his own business at work. He is married to another man, but he keeps his work life and home life separate. In this scenario, it is clear that all four were terminated for gender non-conforming behavior in violation of Title VII's prohibition against deiscrimination on the bases if sex, yet, under *Vickers,* both Andrew and Asher would not be able to state a claim becuase their gender non-conforming behavior occurred outside the workplace. Moreso, according to *Vickers*, because his conduct *occurred outside the workplac*e, Andrew's cross-dressing must be considered an issue of sexual orientation, which in this hypothetical, it is not. Without a doubt, a judicially engrafted exception to Title VII protection that turns on where

gender-non-conforming behavior occurs is not appropriate. Therefore, *Vickers* should be overturned and this case reversed and remanded to the trial court.

## CONCLUSION

Mr. Redmon facially stated a legitimate claim that he endured discrimination that would not have been visited on a female supervisor who shared his attraction to men. The only way to deny Mr. Redmon the right to pursue a Title VII claim, short of Congressional action or a decision from the United States Supreme Court, is to engraft a judicial exception onto Title VII's coverage, and doing so conflicts with the governing precedent of the Supreme Court. Furthermore, this honorable Court has cited the logical test from *Hively* with approval, and it is incongruous to apply that test in *EEOC* yet refuse to apply it in this case. Either the Hively test has won the approval of the 6th Circuit, and should be applied universally, or it has not, and it should not be applied at all. Any other result violates Plaintiff-Appellant's 5th and 14th amendment rights to due process and equal protection under the law, by splitting the gender-nonconforming demographic into a protected class and an unprotected class. The Plaintiff respectfully submits that *Vickers* should be overturned, *EEOC v. Harris Funeral Homes* should be upheld, and this case should be remanded for further proceedings.

Respectfully Submitted,

**Joyce Cooper, Esq.**
TN Bar #30855
**Attorney for Appellant**
Agee Owens & Cooper
110 N. Spring St. STE 100
McMinnville, TN 37110
(931) 507-1000

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

*Check the appropriate box in section 1, and check the box in section 2.*

**1.  Type-Volume**

☑  This document complies with the word limit of FRAP  32(B)(i) because, excluding the parts of the document exempted by FRAP 32(f) and [insert applicable Rule citation, if any] , this document contains 8,670 words.

**or**

☐  This brief complies with the line limit of FRAP  [insert Rule citation] because, excluding the parts of the brief exempted by FRAP 32(f) and [insert applicable Rule citation, if any] , this brief uses a monospaced typeface and  contains [state the number of] lines of text.

**2.  Typeface and Type-Style**

☑  This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

(s)_____

Attorney for  Appellant_____

Dated:  6/13/2019_____

# **ADDENDUM**

| DESCRIPTION OF ITEM | RECORD NO. | Page ID | FILING DATE |
|---|---|---|---|
| Original Complaint | Doc: 1 | 2-8 | 06/21/2018 |
| EEOC Suite of Rights | Doc: 1-1 | 15 | 06/21/2018 |
| Motion to Dismiss | Doc: 11 | 48 | 08/07/2018 |
| Order Dismissing Case | Doc. 21 | 95-109 | 03/29/2019 |